All the Justices concurring.

---

The St. Louis, Fort Scott & Wichita Railroad Company v. Lewis Noble.

Verdict — *Findings, Not in Conflict — Judgment, Not Reversed.*  Where a case is tried before the court and a jury, and the jury render a general verdict and make special findings, and the special findings appear to be slightly ambiguous but do not appear to be in conflict with the general verdict, and the court renders judgment in accordance with the general verdict, *held,* in the absence of the evidence in the supreme court, the judgment of the court below will not be reversed.

*Error from Harvey District Court.*

This was an ordinary condemnation proceeding, instituted by the *St. Louis, Fort Scott & Wichita Railroad Company* to procure a right-of-way through certain lands in Harvey

county, including a tract of land consisting of 200 acres, belonging to *Lewis Noble.* Eight and twenty-four hundredths acres of the land were taken for the right-of-way, and the remainder thereof was thereby injured. After the assessment of damages by the commissioners, Noble appealed to the district court, where the case was tried before the court and a jury, and the jury rendered the following general verdict, and in answer to the following interrogatories made the following special findings:

"VERDICT.

"We, the jury impaneled and sworn in the above entitled case, do upon our oaths find for the plaintiff, and assess the amount of his recovery at $2,650."

"SPECIAL FINDINGS.

"1. What was the actual market value of the land taken for right-of-way, without reference to the question of damages to the remainder of the farm? A. $329.

"2. In addition to the value of the land taken, what was the amount of the real and actual damages to the remainder of the farm by reason of the taking of the strip of land by defendant for a right-of-way for its railroad? A. $2,320.

"3. How much was the damage to that part of the farm north and east of the right-of-way? A. $1,492.24.

"4. How much was the damage to that part of the farm south and west of the right-of-way? A. $828.16.

"5. Was the railroad improperly constructed over plaintiff's farm in respect to drainage? A. No.

"6. If you answer the last question in the affirmative, state how much damage you allow on account of such improper construction? A. ——.

"7. What, if anything, do you allow because sufficient crossings have not been put in on plaintiff's farm? A. Nothing.

"8. How much damage, if any, do you allow plaintiff on account of the liability of fire being set by defendant's engines? A. Nothing.

"9. How much damage do you allow for injury to improvements on land taken, and how much for injury to improvements on lands not taken? A. 1st, $60; 2d, none, if the jury understand question.

"10. How much damage, if any, do you allow for the inconvenience of crossing the railroad on plaintiff's farm? A. $500.

"11. How much, if anything, do you allow for the inconvenience in farming plaintiff's land in shape in which it now is, and in what does that inconvenience consist? A. $1,643.90 —and in loss of time.

"12. What elements and sources of damage have you considered in making up up the amount of your verdict? State fully. A. Destruction of crops, hedges, and trees; appropriation of land for right-of-way, and inconvenience of crossing track and farming the land in its present shape, and depreciation of the commercial value of the land; building of three crossings.

"13. What was the market value of plaintiff's farm immediately prior to the locating of defendant's right-of-way through it? A. $8,000."

The railroad company filed a motion for a new trial, which motion was overruled; and the court then rendered judgment upon the verdict and special findings of the jury, awarding to Noble $2,650 as damages, and costs of suit. The *Railroad Company* brings the case to this court.

*J. H. Richards*, for plaintiff in error.

*Brown & Kline*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: The only question presented by the plaintiff in error, the railroad company, in this court, is stated in its counsel's brief as follows: "The amount awarded by the court upon the special findings of the jury was excessive." The portions, however, of the special findings to which the counsel for the plaintiff in error particularly objects are those portions allowing $500 for the inconvenience of crossing the railroad on the plaintiff's farm, and $1,643.90 for the inconvenience and loss of time in farming the plaintiff's land in the shape in which it was left by the appropriation of the right-of-way. These damages in fact include nearly all the

damages that could be allowed as damages to the land not actually taken, but not all. Whether these amounts are excessive or not we do not know and cannot tell, for none of the evidence upon which the jury made their findings has been brought to this court. The special findings of the jury appear to be slightly ambiguous. But still we cannot say that they are in conflict with the general verdict, and if they are erroneous in any particular we cannot say in what particular. Under the interrogatories presented to the jury for findings, they could not have found and stated separately the precise amount of each and every item or element of damage which they had a right to consider, and which they evidently did consider, for the interrogatories did call for such findings; and they did not attempt to state in their findings the amount of each and every element of damage which they in fact did consider. They considered the "destruction of the crops, hedges and trees," and we must, of course, presume in the absence of the evidence that there was evidence authorizing the jury to consider these matters, and if these crops, hedges and trees were upon the land actually appropriated for the right-of-way, the jury had the right to so consider them. (Comp. Laws of 1885, ch. 23, art. 9, § 86.) But what amount is allowed for these matters is not stated. The jury also considered the "depreciation of the commercial value of the land." We suppose that the jury, by using the words "commercial value," meant the market value, and the market value of the land is affected by everything that would tend to make the land more or less valuable. In estimating the market value of the land, or the depreciation of the market value thereof, the jury had the right to take into consideration among other things the symmetry and beauty of the land before the right-of-way was appropriated, and the destruction of that symmetry and beauty by the appropriation. Whether the jury took into consideration these things or not, we cannot tell, and what, if anything, was allowed for these things we cannot tell. Indeed, from anything presented to us by the rec-

ord in this case we cannot say that any material error was committed by either the jury or the court in the trial of the case in the court below.

The judgment of the court below will therefore be affirmed.

All the Justices concurring.